## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| DAWN CAREY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Docket no. 1:20-cv-00117-GZS |
| | ) |
| AB CAR RENTAL SERVICES, INC; | ) |
| AVIS BUDGET CAR RENTAL, LLC; and | ) |
| AVIS BUDGET GROUP, INC., | ) |
| | ) |
| Defendants. | ) |

### ORDER ON PENDING MOTIONS

Before the Court are two motions:  (1) the Partial Motion to Dismiss Plaintiff's Disability Discrimination Claims by Defendants AB Car Rental Services, Inc., Avis Budget Car Rental, LLC, and Avis Budget Group, Inc. (hereinafter, "Avis") (ECF No. 12); and (2) the Motion to Amend First Amended Complaint by Plaintiff Dawn Carey (ECF No. 26).  Having reviewed the Motions, the related memoranda filed by both parties (ECF Nos. 15, 18, 28), and supplemental briefing previously ordered (ECF Nos. 24 & 25), the Court first GRANTS Plaintiff's Motion to Amend (ECF No. 26) and then GRANTS IN PART and DENIES IN PART Defendants' Partial Motion to Dismiss (ECF No. 12).

### I.      PROCEDURAL BACKGROUND

In June 2020, Defendants filed the pending Partial Motion to Dismiss, which sought dismissal of Plaintiff's associational disability discrimination claims under both the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4571 *et seq.*  Defendants asserted that Plaintiff had failed to timely exhaust her administrative remedies as to these claims.  In October 2020, the Court ordered supplemental briefing on the following two questions related to this Motion:

1.  On the record presented, where it appears that the Maine Human Rights
    Commission denied Plaintiff's request to amend her administrative complaint to
    add the associational disability claim as untimely, should Plaintiff's associational
    disability claim be deemed dismissed under 5 M.R.S.A. § 4612(2-A)?

2.  In light of the 2019 Amendments [to the MHRA], does failure to timely exhaust
    administrative remedies bar a plaintiff from recovering attorney's fees, civil penal
    damages, or compensatory and punitive damages under 5 M.R.S.A. § 4622?

(10/27/20 Order (ECF No. 19).)  In connection with the supplemental briefing, Plaintiff moved to

amend her complaint "to ensure all possible conditions precedent are alleged to have been met in

light of the briefing following th[e] Court's Order Directing Supplemental Briefing."  (Pl. Mot. to

Amend (ECF No. 26), PageID #s 243–44.)

## II.    MOTION TO AMEND

Federal Rule of Civil Procedure 15 specifies that, with exceptions not relevant here, a party

may amend her complaint only by leave of court.  See Fed. R. Civ. P. 15(a)(2).  Such leave will

be freely given "when justice so requires," id., but the Court also has "discretion to deny such a

request for reasons including undue delay, bad faith or dilatory motive, undue prejudice, or futility

of amendment," Keach v. Wheeling & Lake Erie Ry. Co. (In re Montreal, Me. & Atl. Ry., Ltd.),

888 F.3d 1, 12 (1st Cir. 2018) (internal quotation marks omitted).

Here, Plaintiff's proposed Second Amended Complaint (ECF No. 26-1) seeks to add the

following language: "All preconditions precedent required to obtain the relief listed in 5 M.R.S.A.

§ 4622(1) and for EEOC administrative exhaustion have been performed or have occurred."  (Pl.

Mot. to Amend, PageID # 243; 2d Am. Compl., PageID # 248.)[1]  Defendants argue that the

---

[1] Additional proposed changes included a modification to the title of the document to reference Plaintiff's jury demand
and request for injunctive relief, as well a new paragraph asserting the jury demand.  See 2d Am. Compl.,
PageID #s 245 & 251.  The Court notes that a jury trial had already been demanded elsewhere on the docket.  See
ECF No. 4, PageID # 28.  Additionally, a request for injunctive relief was included in the First Amended Complaint.
See ECF No. 1-1, PageID # 16.

amendment would be futile since it primarily relates to Plaintiff's associational disability claims, referencing their pending arguments that those claims should be dismissed.

While the Court appreciates Defendants' futility argument, the Court discerns no reason to deny Plaintiff's current request to amend her complaint. See United States ex. rel. Kelly v. Novartis Pharm. Corp., 827 F.3d 5, 10 (1st Cir. 2016). Rather, in its discretion, the Court determines that it is appropriate and in the best interest of judicial economy to accept the Second Amended Complaint as the operative pleading and to determine whether Plaintiff has failed to state an associational disability discrimination claim accordingly, especially considering that the analysis for futility of a proposed amendment is the same as the general analysis on a motion to dismiss. See Adorno v. Crowley Towing and Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006) ("In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6).") The Court notes that Defendants will not be unduly prejudiced by this approach as the amendments do not substantively change the nature of the claims. The Court therefore GRANTS Plaintiff's Motion to Amend and proceeds to consider the pending Partial Motion to Dismiss with the Second Amended Complaint as the operative pleading.

## III.    PARTIAL MOTION TO DISMISS

### A.  Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In evaluating whether a complaint states a plausible claim, [the court] 'perform[s] [a] two-step analysis.'" Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (quoting Cardigan Mountain Sch. v. New Hampshire Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015)). First, "the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory

legal allegations (which need not be credited)." Morales-Cruz v. University of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012) (citing Iqbal, 556 U.S. at 678). Second, the court "must determine whether the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "This standard is 'not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Saldivar, 818 F.3d at 18 (quoting Iqbal, 556 U.S. at 678).

"Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (internal citations and quotations omitted). Rather, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability" from the facts. Id. at 13.

While a "motion to dismiss under Rule 12(b)(6) generally provides no occasion upon which to consider documents other than the complaint," Doe v. Pawtucket Sch. Dep't, 969 F.3d 1, 8 (1st Cir. 2020), the Court "may make narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint," Flores v. OneWest Bank, F.S.B., 886 F.3d 160, 167 (1st Cir. 2018) (internal quotation marks omitted). Here, each party has tacitly consented to the review of the other's exhibits without converting the motion to one for summary judgment, provided that its own exhibits are considered. Additionally, neither party disputes the authenticity of the other's exhibits. Thus, the Court reviews all of the exhibits (ECF Nos. 12-1–12-7, 15-1–15-17 & 25-1), together with Plaintiff's Second Amended Complaint, without converting the motion.

### B. Factual Background

In February 2018, Carey, who was then 61 years old, applied for a full-time Rental Sales Associate position with Avis at their Bangor airport facility. (2d Am. Compl. (ECF No. 26-1), PageID #s 248–50.) During her interview with the location's manager, Carey revealed that her spouse had Lyme Disease; that he would be leaving his job because of it; and that she was seeking a job that offered full benefits to replace his health insurance.

In March 2018, Avis offered Carey a position that did not include benefits, but it indicated that benefits could potentially become available at a later date. At roughly the same time, Avis offered a full-benefit position to a 20-year-old candidate. Carey resigned on April 11, 2018, when Avis still had neither provided full benefits nor indicated a date upon which benefits would begin.

In August 2018, Carey filed a pro se administrative complaint with the Maine Human Rights Commission ("MHRC"), opting to also dual-file with the EEOC. (Def. Ex. A (ECF No. 12-2), PageID # 96.) In this complaint, Carey checked boxes to indicate that she had been discriminated against on the bases of age and religion.[2] As relevant here, she wrote that she believed she "was discriminated against based on [her] age because [she] had years of customer service experience and was totally honest about [her] intentions and need of full-time employment." (Id.) She further asserted that she was compelled to resign because she was not given a date by which benefits would be offered. Carey's complaint referenced neither her spouse nor his condition. Upon receipt of the complaint, the EEOC provided Carey notice that it would be investigating discrimination under Title VII and the Age Discrimination in Employment Act ("ADEA"). (Id., PageID # 100.)

---

[2] This religious discrimination claim is not pressed in this action.

Between August and December 2018, Avis submitted to the MHRC a response to the complaint.  In December 2018, Carey submitted a rebuttal to that response in which, as relevant here, she made the following statements:

> In February, I interviewed with Brett and his supervisor, Ashley.  He asked if I were interested in part-time or full-time employment.  I specifically told him full-time as I was in need of full-time benefits.  My husband would soon be leaving his job due to his d[e]bilitating battle with Lyme disease.  Brett said that was great because that's what he was looking for.  He asked Ashley to explain the wonderful health benefits that she and her wife received from ABG.  I was excited about the benefits but a bit disappointed with the pay but assured with commis[s]ion I would exceed my pay request.

(Pl. Ex. B (ECF No. 15-3), PageID # 147.)

In April 2019, an MHRC investigator wrote to the parties, encouraging them to provide any additional information that they believed to be relevant.  (Pl. Ex. D (ECF No. 15-5), PageID # 150.)  In June 2019, the investigator again wrote to the parties to inform them that she would soon be preparing a report based on the submissions received by July 1, 2019.  (Pl. Ex. E (ECF No. 15-6), PageID # 151.)  The investigator made additional requests for information including how Carey knew the age of the other new hire; the number of hours she worked each week; the basis for her belief she experienced religious discrimination; as well as any other information Carey wished to provide.  The letter cautioned that information received after the July 1st deadline "may not be considered in the Investigator's Report."  (Id.)  Despite these two invitations to provide additional information, it does not appear that Carey provided any new information regarding her spouse's Lyme Disease or its impact on her employment.

On August 13, 2019, the parties were sent the Investigator's Report.  (Pl. Ex. F (ECF No. 15-7), PageID #s 154–56.)  The report found reasonable grounds to believe that Avis had discriminated against Carey on the basis of age but not religion.  The investigator's analysis focused on the respective qualifications and ages of Carey and the other hire.  In instructions

accompanying the report, the MHRC advised that any objections would be due by August 30, 2019.  (Id., PageID # 153.)  In the event any objections were made, the parties would have the opportunity to address the MHRC at a September 23, 2019 meeting.  Carey apparently made no objections.  On September 25, 2019, the MHRC adopted the investigator's findings and informed the parties of its goal to resolve the age discrimination claim through a settlement.  (Def. Ex. C (ECF No. 12-4), PageID # 111.)

In October 2019—more than 300 days after she had resigned her employment—Carey, now counseled, submitted an amended administrative complaint to the MHRC, again indicating that she wished to dual-file with the EEOC.  (Pl. Ex. G (ECF No. 15-8), PageID #s 157–58.)  On this amended complaint, Carey now checked boxes for age, religion, and disability discrimination.  (Id., PageID # 158.)  She detailed the relevant changes she sought to make as follows:

> 2. I also wish to, amend my complaint to include an allegation of discrimination on the basis of physical or mental disability.
>
> 3. During my job interview with Avis, I disclosed that my husband has Lyme disease; that he was leaving his job because of it; that his job had provided health insurance; and that I was seeking a job that offered full benefits to replace his health insurance for our family.
>
> 4. I believe that Avis refused to hire me into a position with benefits in part because of my association with a person with a physical or mental disability, in addition to my age.[3]

(Id.)  Avis requested that the amended complaint be struck because the new claim was barred by the applicable statute of limitations and did not relate back to Carey's original complaint.  (Pl. Supp. Ex. (ECF No. 25-1), PageID #s 239–42.)  In response, Carey argued that "[c]omplaints that are amended to assert a new basis for unlawful discrimination attributed to the same employment action relate back to the original filing date."  (Pl. Ex. I (ECF No. 15-10), PageID # 166.)  She asserted that the disability discrimination allegations grew out of both her statements regarding (1)

---

[3] Carey also requested to amend for the purpose of naming those Defendants not named in the original administrative complaint.  This aspect of the request was granted and is not currently at issue.

her need for full-time employment in her original complaint; and (2) her spouse's Lyme Disease in her rebuttal letter.

On December 23, 2019, the MHRC wrote to inform the parties that its efforts at conciliation had failed; it would be considering whether to bring suit on Carey's behalf; and Carey had the right to seek relief in a civil action under the MHRA. (Pl. Ex. J (ECF No. 15-11), PageID # 168.)

On December 30, 2019, the MHRC wrote to inform Carey that her request to amend the complaint to add a new protected class status had been denied and the amendment would not be considered. (Pl. Ex. L (ECF No. 15-13), PageID #s 174–76.) The MHRC explained that, while its rules governing amendments made no direct mention of a deadline for amending, its rules governing investigations stated that new evidence would be rejected if the delay in production had created an "unjustifiable burden." (Id., PageID #s 174–75.) The MHRC's rules also provided a hard 17-day deadline for making objections to the investigator's report. Additionally, cases addressing Maine Rule of Civil Procedure 15(b), which would apply to a civil action under the MHRA, focused on three issues when considering whether to grant a late-requested amendment: "whether the moving party has made the request in bad faith or has engaged in undue delay, and whether the amendment would unduly prejudice the nonmoving party." (Id., PageID # 175.) As relevant here, the MHRC reasoned that, despite receiving "ample opportunity," Carey had never sought to amend or to otherwise amplify her claims to allege disability discrimination while the investigation of her claims had been ongoing. (Id., PageID #s 175–76.) Although she had in passing mentioned her spouse's condition in her rebuttal letter, she neither returned to the issue in subsequent submissions nor sought to demonstrate that (1) her spouse's condition was a disability within the meaning of the MHRA, or (2) Avis took an employment action based on that condition. By failing to provide information in support of this claim while the investigation was ongoing,

Carey prevented the MHRC from investigating the claim.  Additionally, allowing the amendment would unduly prejudice Avis, who had neither the opportunity to prepare a response to an associational disability claim nor the information necessary to respond due to the lack of an investigation into Carey's spouse's condition.[4]

On February 3, 2020, the MHRC informed the parties that it would not be bringing suit on Carey's behalf and notified Carey of her own right to sue.  (Pl. Ex. K (ECF No. 15-12), PageID # 169.)  On February 5, 2020, Carey sent the EEOC a separate request to review the amended complaint.  (ECF No. 15-13, PageID #s 170–71.)  She again asserted that the amended complaint related back to the original date of filing.  On the same day, Carey filed her original civil complaint in Maine Superior Court, raising age and associational disability discrimination claims under only the MHRA.  (Compl. (ECF No. 8-2), PageID #s 41–45.)  This complaint did not mention that Carey's amended administrative complaint had been rejected by the MHRC.

On February 6, 2020, the EEOC wrote to inform the parties that (1) it was adopting the MHRC's determination that there were reasonable grounds to believe discrimination had occurred, and (2) it would seek to engage them in conciliation.  (Pl. Ex. M (ECF No. 15-14), PageID # 178.)  On February 10, 2020, the EEOC issued a right-to-sue letter, apparently pertaining to the amended administrative complaint, which it had deemed untimely filed.[5]  (Pl. Ex. N (ECF No. 15-15), PageID # 180.)  On February 14, 2020, the EEOC wrote to inform the parties that conciliation had failed and issued a right-to-sue letter on the original administrative complaint.  (Pl. Ex. O (ECF No. 15-16), PageID #s 183–86.)

---

[4] The letter did note that the amendment would potentially have been permitted had it been filed "before the Commission heard the case and issued its findings."  Pl. Ex. L (ECF No. 15-13), PageID # 174.

[5] The EEOC charge number on this document differs from the charge number on documents pertaining to the original charge.  Compare Pl. Ex. N, PageID # 180 ("EEOC Charge No. 523-2020-00864"), with Pl. Ex. O (ECF No. 15-16), PageID # 184 ("EEOC Charge No. 16B-2018-00801").

On March 12, 2020, Carey filed her First Amended Complaint (ECF No. 1-1) in Maine Superior Court, adding claims under the ADEA and the ADA. As relevant here, the First Amended Complaint again omitted any mention of what had happened in her attempts to amend her administrative complaint. On March 30, 2020, Avis removed the action to this Court, asserting both federal question and diversity jurisdiction. (Not. of Removal (ECF No. 1).)

### C. Discussion

Plaintiff sets forth three counts in her Second Amended Complaint: (1) age and associational disability discrimination, in violation of the MHRA, 5 M.R.S.A. § 4572(1)(A); (2) age discrimination, in violation of the ADEA, 29 U.S.C. §§ 621–34; and (3) associational disability discrimination, in violation of the ADA, 42 U.S.C. §§ 12101–213. Via the present Motion, Defendants seek the dismissal of the associational disability claims contained in the first and third counts. Alternatively, as to the MHRA claim, Defendants request that the Court dismiss Plaintiff's requests for damages and attorney's fees.

### 1. ADA Associational Disability Discrimination Claim

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "[T]he term 'discriminate against a qualified individual on the basis of disability' includes . . . excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b). "The legislative history of [this] section . . . makes clear that the provision was intended to protect qualified individuals from adverse job actions based on 'unfounded stereotypes and assumptions' arising from the employees' relationships with particular disabled persons." Oliveras-Sifre v. Puerto Rico

Dep't of Health, 214 F.3d 23, 26 (1st Cir. 2000). "The term 'disability' means, with respect to an individual . . . a physical or mental impairment that substantially limits one or more major life activities of such individual; . . . a record of such an impairment; or . . . being regarded as having such an impairment." 42 U.S.C. § 12102(1). "To establish a prima facie case under the associational discrimination provision, a plaintiff must prove by a preponderance of the evidence that (1) [s]he was qualified for the job at the time of the adverse employment action; (2) that [s]he was subjected to adverse employment action; (3) that [her] employer knew, at the time of the adverse employment action, that [s]he had a relative or associate with a disability; and (4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." Leavitt v. SW & B Const. Co., 766 F. Supp. 2d 263, 280 (D. Me. 2011) (internal citations omitted); see also Morin v. E. Bearings, Inc., No. 20-cv-00615-PB, 2020 U.S. Dist. LEXIS 236966, at *14 (D.N.H. Dec. 16, 2020).

The parties' arguments do not turn at present on the merits of the ADA claim. Rather, Defendants contend that Plaintiff's claim is barred because Plaintiff did not raise it before the MHRC or EEOC within 300 days of the last alleged act of such discrimination. (Defs. Mot. (ECF No. 12), PageID #s 82–86.) They further assert that Plaintiff's attempt to amend did not "relate back" to her age discrimination claim, preventing Plaintiff from circumventing this limitation period through that amendment. For her part, Plaintiff contends that her original administrative complaint was already sufficient to exhaust the associational disability claim; her proposed amendment related back; and "the ADA allows suit upon EEOC dismissal regardless of whether the dismissal was because the EEOC determined that a charge was untimely." (Pl. Response (ECF No. 15), PageID # 137.)

### a. Timeliness

"[T]he ADA mandates compliance with the administrative procedures specified in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and that, absent special circumstances . . . such compliance must occur before a federal court may entertain a suit that seeks recovery for an alleged violation of Title I of the ADA." Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 277 (1st Cir. 1999); see also 42 U.S.C. § 12117. This "statutory schematic . . . sets out conditions precedent to bringing suit, among which are filing a timely charge . . . ." Martínez-Rivera v. Puerto Rico, 812 F.3d 69, 77 (1st Cir. 2016) (internal citations omitted). Section 2000e-5 sets out a 300-day limitations period applicable in proceedings where the litigant dual-files with a state agency. See 42 U.S.C. §§ 2000e-5(c), (e); 29 C.F.R. § 1601.13(b)(1) (300-day period).

"[T]he timely-charge requirement is mandatory but not jurisdictional . . . ." See Martínez-Rivera, 812 F.3d at 77. As such, it is subject to waiver, estoppel, and equitable tolling. Id.; see also Zipes v. TWA, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). Faced with Defendant's timeliness objection, Plaintiff asserts that the ADA nonetheless allows suit, citing, e.g., 29 C.F.R. § 1601.28(b)(3) (requiring EEOC to issue right-to-sue letter if the charge is determined to be untimely filed). While true in a technical sense, the ADA does not guarantee that said suit will be long-lived when a timeliness objection is lodged. Cf. Robertson v. Barber Foods, LLC, No. 2:19-cv-00455-NT, 2020 U.S. Dist. LEXIS 102437, at *9 n.3 (D. Me. June 11, 2020) ("Before filing a Title VII claim in court, a plaintiff must generally check *two* administrative boxes: the timely filing of a charge with the [EEOC] and the receipt of a right-to-sue letter from the agency." (emphasis added; internal quotation marks omitted)). Accordingly,

the Court concludes that unless it can be established that the claim was effectively raised within the 300-day period—either in the original administrative complaint or, through relation back, in the attempted amendment—Plaintiff's ADA claim is subject to dismissal.

### b.  The Original Administrative Complaint

The purpose of the ADA's exhaustion requirement is "to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009).  "The scope of the civil complaint is accordingly limited to the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." Powers v. Grinnell Corp., 915 F.2d 34, 42 (1st Cir. 1990) (internal quotation marks and citation omitted); see also Morales-Cruz v. University of Puerto Rico, 676 F.3d 220, 223 (1st Cir. 2012) ("[A] Title VII civil action is constrained by the allegations limned in the administrative charge; that is, the judicial complaint must bear some close relation to the allegations presented to the agency." (internal quotation marks and citation omitted)).  Plaintiff contends that, based on her original administrative complaint and her reference to her spouse's condition in her rebuttal letter (which she calls a clarification), it could have reasonably been expected that the EEOC would investigate an associational disability discrimination claim, rendering the claim timely exhausted for present purposes.[6]  (Pl. Response, PageID #s 128–29, 138.)  The Court disagrees.

While "[a]n administrative charge is not a blueprint for the litigation to follow," Powers, 915 F.2d at 38, "[w]hen an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent [civil] complaint are not reasonably related to

---

[6] It is undisputed that Plaintiff's original administrative complaint was timely filed within the applicable 300-day window.  Notably, Plaintiff concedes that this complaint "did not specifically allege disability discrimination" yet maintains that it did mention her "intentions and need of full-time employment."  Pl. Response, PageID #s 128–29.

them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge," Ajayi v. Aramark Bus. Servs., 336 F.3d 520, 527 (7th Cir. 2003) (internal quotation marks omitted); see also, e.g., Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005) ("[P]laintiff's claim generally will be barred if his charge alleges discrimination on one basis— such as race—and he introduces another basis in formal litigation—such as sex."); Chanda v. Engelhard/ICC, 234 F.3d 1219, 1225 (11th Cir. 2000) ("Nothing in [Plaintiff's] EEOC filing mentions discrimination based on national origin, any complaint about such discrimination, or a claim under Title VII. . . .  [A] reasonable investigation based on the EEOC charge . . . would not encompass retaliation based on complaints about national origin discrimination.").  "Even a *pro se* complainant is required to describe the essential nature of the claim and to identify the core facts on which it rests." Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996).

Nothing in Plaintiff's original administrative complaint would have reasonably given rise to an investigation of an associational disability discrimination claim.  Plaintiff checked only boxes for age and religious discrimination.  She did not represent that she was married, let alone that Defendants knew her spouse had a disability and discriminated against her on that basis.  As to the language regarding Plaintiff's "intentions and need of full-time employment," it would be unreasonable to expect that an investigator would divorce that language from the rest of the sentence in which it appeared:

> *I believe I was discriminated against based on my age because* I had years of customer service experience and was totally honest about my intentions and need of full-time employment.

(ECF No. 12-2, PageID # 96) (emphasis added).  In context, this statement does not hint at an unmentioned type of discrimination; Plaintiff was plain about what significance an investigator should take from her words: age discrimination.  See, e.g., Rogers v. Shinseki, No. 1:12-cv-00194-

JRH, 2014 U.S. Dist. LEXIS 36219, at *14 (S.D. Ga. Mar. 18, 2014) (holding "facts . . . buried within a claim for sexual harassment" would not reasonably "trigger an administrative investigation" into associational disability discrimination).

Further, the Court notes that the facts underlying an associational disability claim, even one arising from the same employment action at issue here, are different from those involved in age or religious discrimination claims.  As noted above, a prima facie case of associational disability discrimination would involve the employer's knowledge of the association, whether the associate's condition qualified as a disability under the ADA, and more.  As such, it would not be accurate to say such a claim can be inferred from the same facts.[7]

As to Plaintiff's assertion that her statements in her rebuttal letter should inform this inquiry, there are two problems.  First, Plaintiff states in the same letter that her interviewers responded *positively* when she told them about her spouse's condition.  Rather than suddenly becoming reticent—perhaps something a reasonable investigator might flag—by Plaintiff's own account, they began to energetically promote Defendants' benefits plan to Plaintiff.  Second, given that the purpose of the administrative charge is to provide Defendants and the agency notice, the Court hesitates to put any weight on a rebuttal letter, even one offered by a then-pro se litigant, that is ambiguous at best.  See Sanderson v. Wyoming Highway Patrol, 976 F.3d 1164, 1171 (10th Cir. 2020) ("[T]o determine the claim before the EEOC, one looks *only* to the Charge itself," which thus precludes "the use of statements in a responsive document to enlarge the claim."); Holtz v.

---

[7] The Court concludes that two cases cited by Plaintiff, Caldwell v. Federal Express Corp., 908 F. Supp. 29 (D. Me. 1995) and Moore v. Granite Bay Care, Inc., No. 2:17-cv-00489-NT, 2018 U.S. Dist. LEXIS 119637 (D. Me. July 18, 2018), are readily distinguishable in this regard.  See Pl. Response, PageID #s 128–29.  As to Caldwell, the predicate facts of the plaintiff's age and sex discrimination claims were not distinct and both theories were actually investigated by the MHRC.  See 908 F. Supp. at 35 & n.5.  In Moore, although the pro se complainant had focused on whistleblower retaliation in her administrative charge, she also stated explicitly therein that "a staff person said the current house manager was wanting 'to get rid of the older people on the weekend staff,' which included me." 2018 U.S. Dist. LEXIS 119637 at *11.  This provided clear notice that age was an alternative theory of discrimination.

Rockefeller & Co., 258 F.3d 62, 83 (2d Cir. 2001) (holding an affidavit submitted subsequent to the EEOC charge "could not enlarge the scope of the charge to encompass new unlawful employment practices *or bases for discrimination*" (emphasis added)), *abrogated on other grounds by* Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009).

### c.  The Amended Administrative Complaint

Next, the Court looks to see whether the statement of the claim in Plaintiff's amended administrative complaint was timely.  EEOC regulations establish the following standard for amending a charge:

> A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein.  Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. . . .

29 CFR § 1601.12(b).  Because the amended administrative complaint was filed outside the 300-day period, the associational disability discrimination claim stated therein would be deemed timely only if it can be viewed as clarifying allegations in the original charge or "alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge."  Id.

The Court's view into the EEOC's reasoning (unlike that of the MHRC) is obstructed by the use of a form letter.  In the February 10, 2020 right-to-sue letter, the fourth of eight listed reasons for dismissal is marked; namely, that the "charge" "was not timely filed" because Plaintiff "waited too long after the date(s) of the alleged discrimination."  (Pl. Ex. N (ECF No. 15-15), PageID # 180.)  Given that this letter is also marked with a different charge number than documents pertaining to the original charge, it is not clear whether the EEOC rejected the amended charge as an untimely amendment or as an untimely independent charge.  However, it must be one

or the other and, in either event, a dismissal on untimeliness grounds would have been correct.  In the first instance—if the EEOC understood the amended administrative complaint to be a new charge—it would have been correct under this understanding to dismiss it as filed outside the 300-day period.  In the second instance—if the EEOC understood the amended administrative complaint as intended—it would still have been correct to find that the new associational disability claim was untimely because it did not relate back to the date of the original charge.  Rather, the subject matter of the original administrative complaint was not such that an associational disability claim could reasonably be expected to grow out of it.  Cf. Davis v. Lucent Techs., Inc., 251 F.3d 227, 233 (1st Cir. 2001) (Under Massachusetts's analogue to the MHRA, "[a]n amendment arises out of the same subject matter as a timely-filed charge where the protected categories are related or where the predicate facts underlying each claim are the same." (internal quotation marks omitted)).

The First Circuit has not directly ruled on whether an amended charge asserting a new legal theory arising under a distinct statutory scheme requiring the investigation of different types of facts might still relate back to the date of original filing.  However, most circuits that have weighed in have held that it generally will not.  See, e.g., Manning v. Chevron Chem. Co., 332 F.3d 874, 879 (5th Cir. 2003) (An amendment asserting a new legal theory will relate back only if the employee "*already included* sufficient facts in his original complaint to put the employer on notice that the employee might have additional allegations of discrimination."); Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1327 (10th Cir. 1999) ("Prohibiting late amendments that include entirely new theories of recovery furthers the goals of the statutory filing period—giving the employer notice and providing opportunity for administrative investigation and conciliation."), *abrogated on other grounds by* Martinez v. Potter,

347 F.3d 1208, 1210–11 (10th Cir. 2003).; <u>Fairchild v. Forma Scientific, Inc.</u>, 147 F.3d 567, 575 (7th Cir. 1998) ("[A]n untimely amendment that alleges an entirely new theory of recovery does not relate back to a timely filed original charge.").

Further, by its own terms, the goal of the amended administrative complaint was to "*include* an allegation of discrimination on the basis of physical or mental discrimination" (Pl. Ex. L (ECF No. 15-13), PageID # 173) (emphasis added), which suggests that not even Plaintiff contemporaneously believed the addition of such an allegation constituted a clarification or amplification of an allegation included in the original administrative complaint.  Accordingly, the Court concludes that Plaintiff's ADA claim was neither timely presented in the original administrative complaint nor the amended administrative complaint and, consequently, the claim must be dismissed.

**2.  MHRA Associational Disability Discrimination Claim**

Once again, neither party argues the merits of this claim at present; nor do they contend that the showing necessary to establish an MHRA associational disability discrimination claim differs from the ADA context.   <u>See, e.g.</u>, 5 M.R.S.A. § 4553(2)(D) ("Discriminate" includes "[e]xcluding or otherwise denying equal jobs or benefits to a qualified individual because of the known protected class status of an individual with whom the qualified individual is known to have a relationship or association."); <u>Dudley v. Hannaford Bros. Co.</u>, 333 F.3d 299, 312 (1st Cir. 2003) ("It is settled law that the MHRA should be construed and applied along the same contours as the ADA."); <u>Soileau v. Guilford of Me., Inc.</u>, 105 F.3d 12, 14 (1st Cir. 1997) ("[I]nterpretation of the ADA and of the Maine Human Rights Act have proceeded hand in hand . . . ."); <u>Winston v. Maine Tech. Coll. Sys.</u>, 631 A.2d 70, 74 (Me. 1993) ("[B]ecause the MHRA generally tracks federal anti-

discrimination statutes, it is appropriate to look to federal precedent for guidance in interpreting the MHRA.").

Rather, Defendants again argue that Plaintiff failed to timely exhaust her administrative remedies for the same reasons asserted above.  Plaintiff, meanwhile, reasserts that she timely exhausted this claim; contends that the MHRC's denial of leave to amend was erroneous and, in any event, not controlling; and, alternatively, argues that her MHRA claim survives regardless because failure to timely exhaust administrative remedies does not bar her from obtaining equitable relief.

The MHRA applies the same 300-day window as the federal regime, see 5 M.R.S.A. § 4611, and has a nearly identical standard for relation back through amendment:

> Complaints may be amended to cure technical defects or omissions, including failure to swear to the complaint under oath before a Notary Public, or to clarify and amplify allegations made therein.  Such amendments and amendments alleging additional acts that constitute unlawful practices related to or growing out of the subject matter of the original complaint will relate back to the date the complaint was first received.

94-348 C.M.R. Ch. 2, § 2.02(F).  Accordingly, for the reasons previously stated, the Court holds that neither Plaintiff's administrative complaint nor her attempted amendment served to timely exhaust her MHRA associational disability claim.[8]  However, the consequences of this failure require their own analysis, especially in light of recent amendments to the MHRA that became effective September 19, 2019.  See 2019 Me. Laws 1201, ch 465 (titled "An Act To Enhance the Administration of the Maine Human Rights Act") (hereinafter, the "2019 Amendments").

In relevant part, the 2019 Amendments added a new subsection to 5 M.R.S.A. § 4612:

> 2-A.   Administrative dismissal. The executive director of the commission may administratively dismiss a complaint for reasons including, but not limited to:

---

[8] The Court notes that, even if Plaintiff were correct that the MHRC erred by denying leave to amend despite having already concluded its investigation and the passage of more than a year, the amendment would still not have related back to the original administrative complaint.

A.      Lack of jurisdiction;

B.      Failure to substantiate the complaint of discrimination;

C.      Failure to file a complaint of discrimination within 300 days of the date of alleged discrimination;

D.      Failure by complainant to proceed or cooperate with the investigation, including but not limited to a complainant's repeated or egregious failure to abide by the commission's confidentiality requirements;

E.      Bankruptcy filing by respondent; or

F.      Death of a complainant, if no person with legal authority to continue the case appears on that person's own behalf or on behalf of the complainant's estate within a reasonable time.

An administrative dismissal operates as an order of dismissal and has the same effect as a finding by the commission that no reasonable grounds exist to believe that unlawful discrimination has occurred.

5 M.R.S.A. § 4612(2-A).  In parallel, 5 M.R.S.A. § 4622 ("Limitations on attorneys' fees and damages; procedures") was amended, in relevant part, as follows:

1.      Limitation.   Attorney's fees under section 4614 and civil penal damages or compensatory and punitive damages under section 4613 may not be awarded to a plaintiff in a civil action under this Act unless the plaintiff alleges and establishes that, prior to the filing of the civil action, the plaintiff first filed a complaint with the commission and the commission either:

A.      Dismissed the case under section 4612, subsection 2 **or 2-A**; . . .

5 M.R.S.A. § 4622 (amended language emphasized).

In written testimony in support of the Amendments, the MHRC explained these changes as follows:

The proposal also adds language stating that an administrative dismissal operates as an order of dismissal from the Commission and is the functional equivalent to a finding of no reasonable grounds.  This language is necessary because at least one lower court has found that an administrative dismissal bars a complainant from seeking certain remedies, including attorneys' fees, because it is not a finding or action by the Commission itself.

(Hearing on L.D. 1702 Before the J. Standing Comm. on Jud., 129th Legis. 1 (2019) (testimony of Amy M. Sneirson, Executive Director, MHRC)).[9]

---

[9] It appears that the lower court decision at issue may have been <u>Angelillo v. Idexx Labs., Inc.</u>, No. CV-16-371, 2018 Me. Super. LEXIS 64 (Me. Super. Ct. March 29, 2018).  In <u>Angelillo</u>, the MHRC had warned the plaintiff that failure to submit a timely reply to the response to her administrative complaint would result in an administrative dismissal.

In their supplemental briefing, the parties advance the following arguments as to the effects of the 2019 Amendments.  Defendants assert that the MHRC's handling of Plaintiff's amended administrative complaint did not constitute an administrative dismissal pursuant to 5 M.R.S.A. § 4612(2-A) but, rather, a denial of leave to amend, which is distinct and does not implicate the exception in § 4622(1).  (Defs. Supp. Brief (ECF No. 24), PageID # 225.)  They also contend that, in any event, reading the 2019 Amendments to allow Plaintiff to recover damages and attorney's fees despite not raising her associational disability claim within the 300-day period would lead to an absurd result.  They observe that, under § 4613(2)(C), a civil action "must be commenced not more than either 2 years after the act of unlawful discrimination complained of or 90 days after any of the occurrences listed under section 4622, subsection 1, paragraphs A to D, whichever is later."  (Id., PageID #s 229–30.)  They assert that reading the plain language of this statute together with the revised §§ 4612 and 4622 would allow a plaintiff to file suit "potentially decades after the alleged unlawful conduct."    (Id., PageID # 230.)   Defendants contend a more reasonable interpretation is that "the Maine Legislature intended for the 300-day MHRC filing period to constitute a statute of limitations barring untimely actions or, at a minimum, intended that claims

---

The plaintiff failed to file a reply and her administrative complaint was dismissed.  Under the pre-Amendment MHRA, the Maine Superior Court held as follows:

> The intent of section 4622(1) is to require complainants to pursue their remedies before the Human Rights Commission before they can recover compensatory damages, punitive damages and attorney's fees. When a complainant has failed to cooperate and pursue her claim before the Commission, it follows that section 4622(1) precludes those remedies.

> Accordingly, Angelillo's entitlement to civil penal damages, compensatory damages, punitive damages, and attorney's fees is barred under 5 M.R.S. § 4622(1), and Idexx is therefore entitled to summary judgment dismissing the complaint.

Angelillo, 2018 Me. Super. LEXIS at *27.  The Law Court affirmed.  See Angelillo v. IDEXX Labs., Inc., No. CUM-18-141, 2018 Me. Unpub. LEXIS 88, at *2–3 (Me. Nov. 20, 2018) ("Because Angelillo's case was . . . dismissed administratively, see 11 C.M.R. 94 348 002-2 § 2.02(H) (2014), and not pursuant to section 4612(2), attorney fees and civil penal, compensatory, and punitive damages were barred by section 4622(1).")

not filed with the MHRC within the 300-day period (but nevertheless within the 2-year limitations period of Section 4613(2)(C)) are not subject to recovery of attorneys' fees, civil penal damages, or compensatory and punitive damages under Section 4622." (Id.)

Plaintiff, for her part, agrees with Defendants that the failure to timely exhaust her claim within the 300-day window would still bar her from recovering attorney's fees or damages, despite the "plain language" of the 2019 Amendments. (Pl. Supp. Brief (ECF No. 25), PageID #s 236–37.) She asserts that the legislative history reveals no intention to make such a drastic change and contends that the Law Court would be unlikely to read the 2019 Amendments in this manner. Nonetheless, Plaintiff contends that the 2019 Amendments are still relevant. She asserts that, due to her failure to comply with deadlines in the investigation of her claims, the MHRC effectively dismissed the amended administrative complaint for reasons "akin to the reasons stated in" § 4612(2-A)(D) ("failure by complainant to proceed or cooperate with the investigation"). (Id., PageID #s 233–34.) She further asserts that dismissal under this section would clear the bar for recovering damages and fees.

Ultimately, the Court agrees with Defendants that Plaintiff did not timely exhaust administrative remedies as to the MHRA associational disability discrimination claim. The Court finds that MHRC did not administratively dismiss this claim under § 4612(2-A) but, rather, denied leave to amend to include it.[10] However, the result of Plaintiff's failure to timely exhaust administrative remedies is not the dismissal of the claim but, rather, a limitation on the forms of relief available under the MHRA. See, e.g., Walton v. Nalco Chem. Co., 272 F.3d 13, 21 (1st Cir.

---

[10] As a consequence of this finding, the Court need not further address the effects of the 2019 Amendments. The Court notes, however, that even if it accepted Plaintiff's contention that the MHRC's denial of leave to amend operated as an administrative dismissal for failure to cooperate, Plaintiff's concession that she still needed to timely exhaust her claim would render the point moot given the Court's holding that the amendment would not relate back. If, as Plaintiff contends, the Law Court would be unlikely to read away the longstanding timeliness requirement, it is difficult to envision the Law Court being more generous to a litigant who was both untimely and uncooperative.

2001) ("[T]he section 4622 requirement, strictly speaking, is not an element of the statutory age-discrimination claim, since it does not preclude a jury finding of discrimination, but merely limits the types of recovery available to prevailing plaintiffs."); Robertson v. Barber Foods, LLC, No. 2:19-cv-00455-NT, 2020 U.S. Dist. LEXIS 102437, at *11 (D. Me. June 11, 2020) ("Because the exhaustion requirement is not jurisdictional, the omission does not bar the courthouse door to the extent that the Plaintiff seeks other relief, and the Plaintiff here seeks declaratory relief in addition to damages." (internal citations omitted)); Burnett v. Ocean Props. Ltd., No. 2:16-cv-00359-JAW, 2017 U.S. Dist. LEXIS 55059, at *22 (D. Me. April 11, 2017) (concluding that plaintiff's MHRA claims seeking equitable relief could proceed despite failure to properly exhaust). Accordingly, Plaintiff's MHRA associational disability discrimination claim survives to the extent she seeks equitable relief.

## IV. CONCLUSION

For the reasons stated, the Court hereby GRANTS Plaintiff's Motion to Amend First Amended Complaint (ECF No. 26) and GRANTS IN PART and DENIES IN PART Defendants' Partial Motion to Dismiss Plaintiff's Disability Discrimination Claims (ECF No. 12). Plaintiff's associational disability discrimination claim under the ADA, as stated in Count III, is DISMISSED. The case shall proceed as to Counts I & II. However, to the extent that Count I contains a state law claim for associational disability discrimination, Plaintiff is subject to the damages limitations listed in 5 M.R.S.A. § 4622 and thereby limited to equitable relief.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 8th day of February, 2021.